**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
SALVATORE MARTELLI,           :    Case No. 14-8101 (FLW)
                                    :        **OPINION**
                Appellant,      :
                                      :
       v.                             :
                                      :
COLTS NECK GOLF AND COUNTRY
CLUB,                                    :
                                      :
                Appellee.       :
_____:

**WOLFSON, United States District Judge:**

        This matter comes before the Court on the appeal of Salvatore Martelli ("Appellant" or "Martelli") from the final order, dated December 23, 2014, of the United States Bankruptcy Court for the District of New Jersey denying Appellant's motion for reconsideration for, _inter alia_, an order denying the appointment of a Chapter 11 trustee or examiner, and denying Appellant's request for a comfort order that the automatic stay does not act to prevent Appellant from filing a case in the New Jersey Superior Court against Dr. Anthony DeGennaro ("DeGennaro"), Carmella DeGennaro and Pegasus Properties, LLC ("Pegasus"), to recover an allegedly fraudulent transfer or, in the alternative, for an order granting relief from the automatic stay to allow Appellant to file the fraudulent transfer suit against the DeGennaros and Pegasus. This Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons set forth below, the Court affirms in part and reverses in part the decisions of the Bankruptcy Court. Specifically, the denial of Appellant's motion for relief from the automatic stay is reversed; the remaining decisions are affirmed.

1

**I. Background**

The background of this dispute has been set forth in detail before the Bankruptcy Court. Accordingly, the Court sets forth only those facts that are relevant to this appeal.[1]

In May 1998, Pegasus, which is wholly owned by Anthony and Carmella DeGennaro, acquired land in Colts Neck, New Jersey, from Martelli for the purpose of building a golf course. As part of the transaction, Martelli and DeGennaro formed Colts Neck Golf and Country Club, Inc. ("Debtor" or "CNGCC"), with Martelli as a 10 percent shareholder and DeGennaro as a 90 percent shareholder. In May 2000, CNGCC entered into a lease with Pegasus to occupy the golf course and clubhouse at a monthly rent of $75,000. The rent was determined based upon "a return on capital without regard to net earnings." Tr. of Decision by the Hon. Patricia Del Bueno Cleary, April 16, 2014 (hereinafter "Tr. of Judge Cleary Decision"), 13. Throughout the duration of the lease, CNGCC was never able to pay the full monthly rent to Pegasus, which accepted partial payments and deferred the unpaid rent. Appellee Br. at 2.

In November 2010, Martelli filed suit against CNGCC and DeGennaro in the Superior Court of New Jersey, Monmouth County, Chancery Division. In his suit, Martelli alleged breach of contract, fraud, unjust enrichment, conversion, and he sought the appointment of an independent accountant. Tr. of Judge Cleary Decision, 2–3**.** Following a 24-day bench trial before Judge Cleary, the court entered a judgment on April 24, 2014 in favor of Martelli and against CNGCC for $341,540 for past due earnings and ordered a buyout of $385,000 for Martelli's ten percent shareholder interest in CNGCC. Superior Ct. Order, April 24, 2014.

---

[1] Facts are drawn from the record supplied on appeal.

On the breach of contract claim, the state court found that the Memorandum of Understanding between the parties provided that Martelli was entitled to ten percent of the "net earnings" attributable to revenue derived from "green fees" collected by the golf course; the court found that the amount of net earnings due to Martelli was $341,540. Tr. of Judge Cleary Decision, 6, 11.

Martelli had also asserted that he was an oppressed shareholder, pursuant to N.J.S.A. 14A:12-7(1)(c). Judge Cleary found a "substantial element of unfairness in Anthony DeGennaro's dealings with Salvatore Martelli." Tr. of Judge Cleary Decision, 12. The state court found that DeGennaro operated CNGCC without considering its fiduciary duty to stockholders, constituting unfairness under N.J.S.A. 14A:12–7(1)(c). Tr. of Judge Cleary Decision, 13–14. Judge Cleary determined that Degennaro "fixed the rent, paid by [CNGCC] to Pegasus Properties, which is wholly [owned] by Dr. and Mrs. DeGennaro, not at a fair market rate, but at a rate designed to give Anthony DeGennaro a return on capital without regard to net earnings." Tr. of Judge Cleary Decision, 13. Judge Cleary accepted the testimony of Martelli's expert on the issue of fair market rent, but did not elaborate further on the issue. Judge Cleary also noted that after Pegasus Properties received a settlement of $300,000—some of which would have been allocable to CNGCC—DeGennaro refused to allow Martelli to review the corporate records or provide information about the corporation's financial institution. Tr. of Judge Cleary Decision, 17. Judge Cleary held that this and other conduct by DeGennaro "frustrated the legitimate expectations of [Martelli] and his conduct was contrary to the understanding between the parties," and therefore she found that Martelli was an oppressed shareholder. Tr. of Judge Cleary Decision, 14.

The court thus required a buy-out of Martelli's ten percent stock interest in CNGCC, and set the buy-out amount at $385,000. Tr. of Judge Cleary Decision, 17. However, the court found that, while DeGennaro's actions were unfair, they "did not rise to the level of fraud or illegality."

Tr. of Judge Cleary Decision, 18. The court dismissed the counts alleging fraud, unjust enrichment, and conversion against CNGCC, as well as all counts against the individual, DeGennaro. Judge Cleary Final J., April 24, 2014.

Between May 27, 2014 and June 3, 2014, Martelli's and CNGCC's counsel communicated by e-mail and telephone with respect to the judgment pending appeal. However, the parties could not come to an agreement on the terms of a deposit and ceased communication on June 3, 2014.[2] On June 9, 2014, DeGennaro, as the majority shareholder of CNGCC, filed an appeal of the trial court's decision with the New Jersey Superior Court, Appellate Division.

On or about June 11, 2014, CNGCC filed a voluntary petition seeking the protection of Chapter 11 of the Bankruptcy Code. Since the filing, CNGCC has operated as debtor in possession and retained special counsel. CNGCC has not yet submitted a reorganization or liquidation plan. On July 25, 2014, Martelli moved to dismiss the Chapter 11 case, alleging that CNGCC filed the Chapter 11 bankruptcy in bad faith to avoid posting a supersedeas bond, and CNGCC was highly unlikely to file a confirmable plan. The Bankruptcy Court denied the motion to dismiss by order dated September 17, 2014.

On October 14, 2014, Martelli filed a motion to (1) appoint a trustee under 11 U.S.C. 1104(a)(1)–(2); (2) appoint an examiner under 11 U.S.C. 1104(c); (3) order the United States Trustee to file a motion requesting the appointment of a trustee pursuant to 11 U.S.C. 1104(e); and (4) extend the Chapter 11 proceeding to include Pegasus as a debtor and then substantively

---

[2] In the New Jersey Superior Court matter, Appellant was represented by Shannon Fury Curtis, Esq., who signed a certification on June 24, 2014 detailing her communication with Debtor's counsel. Debtor's counsel advised Appellant's counsel that Debtor would be unable to obtain a supersedeas bond, and would instead deposit cash in an interest bearing account in trust for Appellant pending the appeal. Appellant alleges that Debtor ceased communication with Appellant's counsel about the deposit as of June 3, 2014. The parties allegedly engaged in settlement negotiations in lieu of an appeal but were not successful.

consolidate the CNGCC and Pegasus cases by authority of 11 U.S.C. 105 and 11 U.S.C. 1123(a)(5)(c). Martelli argued that the facts set out in the record and a supporting certification from Martelli's state court counsel, Shannon Fury Cutis, Esq., evidenced sufficient cause—specifically "fraud and dishonesty in the management of the affairs" of CNGCC—to appoint an independent trustee as specified in Section 1104(a)(1). As evidence of this mismanagement, Martelli cited DeGennaro's rent "in excess of the fair market rental value, as a way of diverting funds away from [CNGCC]," which CNGCC was allegedly still paying to Pegasus.[3] Martelli further claimed that none of Pegasus' $300,000 settlement in 2006, which included damages for alleged lost profits of CNGCC, was paid to CNGCC. Moreover, Martelli noted Judge Cleary's findings that DeGennaro failed to provide access to CNGCC's records, and also highlighted several alleged discrepancies between DeGennaro's completed Amended Schedule B and CNGCC's income tax returns.[4]

On November 18, 2014, the Bankruptcy Court held a hearing on the motion and issued an oral decision denying Martelli's motion. *See* Bankruptcy Decision Tr., November 18, 2014 (hereinafter "Bankruptcy Transcript I"), 18:5–6. The Bankruptcy Court "[did not] see the point of appointing a trustee" because, as the largest unsecured creditor, Martelli had "a lot of control in this case" and would be protected. *Id.*, 16:11–24. The court further stated that between Martelli, the United States Trustee, and the court, "we can certainly oversee the kind of decisions that the

---

[3] Martelli also notes that Ms. Curtis certified that DeGennaro has "co-mingled [CNGCC's] assets and liabilities with that of Pegasus. . . ." and accuses DeGennaro of "continuing to enrich himself through Pegasus."

[4] While Appellant's Brief in support of his motion for alternative forms of relief also requested (1) the United States to order appointment of a trustee pursuant to 11 U.S.C. 1104(e), and (2) extension of the proceeding to embrace Pegasus and consolidate the cases. Martelli does not appeal the denial of these requests, and, accordingly, the Court finds it unnecessary to discuss the aforementioned alternative forms of relief.

debtor is going to make with regard to the landlord and his ability to confirm." *Id.*, 16:18–20. Moreover, the Bankruptcy Court did not agree that Judge Cleary found dishonesty and did not believe there was enough in the state court decision to support the appointment of a trustee. *See Id.*, 17:17–22. The Bankruptcy Court therefore denied the motion on all issues: to appoint a trustee or an examiner, to order the United States Trustee to move for the appointment of a trustee, and to include Pegasus as a debtor in the present case.

Martelli then filed a motion on November 24, 2014 for (1) reconsideration of the denial of Martelli's motion to appoint a Chapter 11 trustee, (2) a comfort order that the automatic stay does not prevent Martelli from filing a fraudulent transfer action against the DeGennaros and Pegasus in the New Jersey Superior Court, or, (3) in the alternative, an order granting relief from the automatic stay to permit Martelli to institute the fraudulent transfer suit against the DeGennaros and Pegasus. Martelli argued that the Bankruptcy Court failed to consider the *Rooker-Feldman* doctrine in the previous decision, and that the court was bound by the findings of Judge Cleary with regard to the excessive rent and other issues.

At the hearing on the motion for reconsideration on December 23, 2014, the Bankruptcy Court indicated that the parties had essentially reiterated their prior arguments, and that it did not believe that it had previously misapplied the facts or the law. *See* Bankruptcy Decision Tr., December 23, 2014 (hereinafter "Bankruptcy Transcript II"), 19:17–20. Further, Debtor argued at the hearing that it did not believe there was any fraudulent transfer; the Bankruptcy Court stated that this determination was within Debtor's business judgment. *Id.* at 16:7–8. Further, the Bankruptcy Court stated its belief that "the rent [was] going to work itself out in the confirmation." *Id.* at 16:17–19.  While the Bankruptcy Court found that it did not have any jurisdiction over DeGennaro or Pegasus—so the automatic stay would not apply if Martelli chose to sue either of those parties, *id.* at 20:6–10—the Bankruptcy Court nevertheless held that Martelli could not sue

6

Pegasus or DeGennaro for fraudulent transfer because that cause of action was an estate asset. *Id.* at 20:23–25. It is from this decision that Martelli appeals.

## II. Standard of Review

The standard of review for Bankruptcy Court decisions is determined by the nature of the issues on appeal. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a clearly erroneous standard, where a factual finding may be overturned only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). "The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous." *First Western SBLC, Inc. v. Mac–Tav. Inc.*, 231 B.R. 878, 881 (D.N.J. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

On the other hand, legal conclusions from the Bankruptcy Court are subject to *de novo*, or plenary, review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). If the issues on appeal present both findings of fact and conclusions of law, the applicable standard, "clearly erroneous" or "*de novo*," must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–103 (3d Cir. 1981)).

Lastly, decisions on procedural bases are reviewed for abuse of discretion. *In re United Healthcare Sys., Inc.,* 396 F.3d 247, 249 (3d Cir. 2005). Deference is the hallmark of abuse of discretion review. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 143 (1997); *Koon v. United States,*

518 U.S. 81, 98–99 (1996). Thus an exercise of discretion is not disturbed unless the court committed a clear error of judgment in making its decision, meaning that it relied upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Nutraquest, Inc.,* 434 F.3d 639, 645 (3d Cir. 2006); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315, 320 (3d Cir. 2001); *Int'l Union, UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3d Cir. 1987). *See generally In re United Healthcare Sys., Inc.,* 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.,* 145 F.3d 124, 130–31 (3d Cir.1998)) (a district court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.").

## III. Discussion

Appellant appeals the decision of the Bankruptcy Court denying (1) reconsideration of the denial of Appellant's motion to appoint a Chapter 11 trustee, and (2) a comfort order that the automatic stay does not apply to Appellant to stay him from filing a fraudulent transfer action against the DeGennaros and Pegasus in the New Jersey Superior Court, or, in the alternative, (3) relief from the automatic stay to allow Appellant to file the fraudulent transfer suit against the DeGennaros and Pegasus. First, Appellant argues that Judge Cleary's finding that Appellant is an oppressed shareholder, based on the excessive rent charged by Pegasus, and Pegasus' failure to disperse its alleged $300,000 settlement proceeds, amounts to "cause" for the appointment of a trustee. In that regard, Appellant argues that the Bankruptcy Court erred in not accepting the facts found by Judge Cleary. Second, Appellant argues that there was sufficient "cause" to enter the comfort order or grant stay relief to allow Appellant to file suit against Pegasus and the DeGennaros on behalf of Debtor for the continued payment of excessive rent and the alleged diversion of settlement proceeds from Debtor. With respect to the denial of relief from the

automatic stay, Appellant contends that the Bankruptcy Court erred in relying on the business judgment rule, which Appellant perceives as the Bankruptcy Court's reason for preventing the fraudulent transfer suit.

### A. Appointment of a Trustee

Section 1104 provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

[11 U.S.C. § 1104(a)].

A bankruptcy court's decision to appoint a trustee pursuant to Section 1104(a) must be made on a case-by-case basis. *In re Sharon Steel Corporation*, 871 F.2d 1217, 1226 (3d Cir. 1989). The party moving for the appointment of a Chapter 11 trustee must prove the need for such appointment under either subsection by clear and convincing evidence. *In re G-I Holdings, Inc.*, 385 F.3d 313, 317–18 (3d Cir. 2004) (quoting *In re Marvel Entertainment Group*, 140 F.3d 463, 473 (3d. Cir. 1998)); *see also Sharon Steel*, 871 F.2d at 1226. The appointment of a trustee is an extraordinary remedy and "should be the exception, rather than the rule." *Sharon Steel*, 871 F.2d at 1226; *see In re Euro–American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) ("[T]he appointment of a § 1104 trustee is an extraordinary remedy"). In fact, there is a "strong presumption" against appointing an outside trustee because the fiduciary obligations of the debtor

to the creditors alleviate the need for a trustee. *Marvel*, 140 F.3d at 471; *see G-I Holdings*, 140 F.3d at 319 (clarifying that the "strong presumption" was simply another way of referring to the clear and convincing evidence standard). "The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization." *Marvel*, 140 F.3d at 471.

While appointment of a trustee is mandated upon a finding of "cause" under subsection (1) or upon a finding that a trustee would best serve the interests discussed in subsection (2), the decision is within the Bankruptcy Court's discretion. That is, a determination of "cause" for the appointment of a trustee under subsection (1) is within the discretion of the court. *See Sharon Steel*, 871 F.2d at 1226 (citing *Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987)); *see In re Potts*, 142 F.2d 883 (6th Cir. 1944) ("The bankruptcy court has a broad discretion to appoint a trustee at any time in the course of the proceedings."); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006*)* ("The decision to appoint a chapter 11 trustee is a factual determination entrusted to the discretion of the bankruptcy judge."). Subsection (2) is a "flexible standard" that also calls for discretion. *See Sharon Steel*, 871 F.2d at 1226 (citing *Committee of Dalkon Shield Claimants*, 828 F.2d at 242); *see In re Fairwood Corp.*, 2000 WL 264319 at *4 (S.D.N.Y. March 9, 2000) ("[b]ankruptcy courts have broad discretion in deciding whether to . . . appoint a trustee for cause and to decide whether such appointment is in the best interests of creditors or the estate under Section 1104(a)."). Therefore, the Bankruptcy Judge's factual determinations to appoint a trustee under either Section 1104(a)(1) or (2) are reviewable under an abuse of discretion standard. *See Sharon Steel*, 871 F.2d at 1226; *see In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999); *see Schuster v. Dragone*, 266 B.R. 268 (D. Conn. 2001).

Here, Appellant moved under both subsections of § 1104(a); the Bankruptcy Court, however, did not clearly explain or delineate how its ruling applied the different subsections.[5] Nonetheless, I will examine the two subsections separately in reviewing the reasoning of the Bankruptcy Court.

### 1. § 1104(a)(1) – For Cause Appointment

Appellant argues that the Bankruptcy Court was bound to accept Judge Cleary's findings of facts, but instead ignored her findings in denying the motion to appoint a trustee and the subsequent motion for reconsideration. In particular, Appellant focuses on two aspects of Judge Cleary's decision: (1) the determination that the rent exceeded the fair market value for the golf course and (2) that the 2006 settlement proceeds were diverted away, at least in part, from Debtor to Pegasus and the DeGennaros. Appellant asserts that Judge Cleary had determined that such conduct was oppressive and dishonest, and that these determinations were binding on the Bankruptcy Court.[6] Appellant Br. at 7. Appellant maintains these state court findings constitute

---

[5] Appellant's original motion also requested the appointment of a trustee under § 1104(a) or (e), or the appointment of an examiner under § 1104(c); however, the present appeal only raises the issue of appointment of a trustee under § 1104(a).

[6]   On July 17, 2015, Appellant filed a Motion Objecting to Allowance of Claims, specifically petitioning the Bankruptcy Court to disallow several filed claims. Subsequently, Appellant submitted the Motion to this Court as "after-acquired evidence and/or as a supplemental submission to [his] brief." In Appellant Counsel's Certification to Support the Motion, Mr. Rossi alleges that several claims related to renovations to Pegasus-owned real estate were dishonestly listed as Debtor's assets, despite Mrs. DeGennaro testifying in state court that they were in fact assets of Pegasus Properties. App. Cert. at 1–2.

Appellant asks the Court to consider the disputed claims with respect to Appellant's motion to appoint a trustee. Specifically, Appellant points to the claims, and Debtor's failure to dispute them, as illustrations of DeGennaro's—and thus Debtor's—dishonesty. However, this Court's review is limited to "review of the evidence before the Bankruptcy Court and which was made a part of the record at the time" of the matter on appeal. *Matter of Halvajian*, 216 B.R. 502, 509 (D.N.J.) *aff'd sub nom. In re Halvajian*, 168 F.3d 478 (3d Cir. 1998); *see also United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances."). Accordingly, this evidence is not properly before the Court and will not be considered.

"cause per se" under 1104(a) to appoint a trustee, thereby removing any discretion that the Bankruptcy Court would have. *Id.* Appellant further contends that even if the Bankruptcy Court could exercise discretion, that discretion was abused on account of the state trial court's findings that Appellant was "the victim of dishonesty and oppressive conduct." Appellant Br. at 8.

Appellant also invokes the *Rooker-Feldman* doctrine, arguing that the doctrine bars the Bankruptcy Court from challenging the findings of the state trial court. Appellant Br. at 8. In that regard, Appellant argues that the Bankruptcy Court ignored the findings of Judge Cleary, i.e., the findings of excessive rent and the diversion of the $300,000 settlement proceeds from Debtor to Pegasus.

As discussed *supra*, the Bankruptcy Court's factual determination of cause for appointment of a trustee under § 1104(a)(1) is discretionary and reviewed for abuse of that discretion. *See Sharon Steel*, 871 F.2d at 1226. In denying Appellant's original motion to appoint a trustee, the Bankruptcy Court stated "I don't agree that [Judge Cleary] found dishonesty. . . . [Y]ou're reading it into it." Bankruptcy Transcript I, 17:17–18. The Bankruptcy Court further stated that "it doesn't equate to take those findings [of the state court] to support the appointment of a trustee in this case. Especially with the amount of assets that are available to pay a trustee and then also pay creditors." *Id.* at 17:3–6. Essentially, the Bankruptcy Court disagreed with Appellant's interpretation of the state court's conclusions. And, at the hearing on the Motion for Reconsideration, the Bankruptcy Court stated that neither party presented new arguments to establish any misapplication of the facts or the law. *See* Bankruptcy Transcript II, 19:17–20. The Bankruptcy Court did not abuse its discretion in making these findings

Indeed, despite Appellant's insistence that Judge Cleary had found that Debtor acted dishonestly, the state court decision lacks any finding regarding Debtor's dishonesty. Rather, while Judge Cleary found a "substantial element of unfairness" in DeGennaro's dealings with Appellant,

she explicitly held that Debtor's actions "while unfair, did not rise to the level of fraud or illegality." *See id*. 12:12, 18:5–7. Moreover, the New Jersey oppressed shareholder statute does not require a finding of dishonesty; rather, the statute provides a remedy where "the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders." N.J.S.A. 14A:12-7(c). Judge Cleary only found that DeGennaro acted "oppressively or unfairly," which does not necessarily equate to dishonesty. "Unfairness," in contrast to "dishonesty", is not one of the listed "causes" for appointment of a Chapter 11 trustee under § 1104(a)(1), and therefore I disagree with Appellant that Judge Cleary's decision gave right to a "per se" cause under the statute.[7]

Here, Judge Cleary found that DeGennaro "fixed the rent . . . not at a fair market rate, but at a rate designed to give Anthony DeGennaro a return on capital without regard to net earnings." Judge Cleary Decision, 13:5–9. She also found that DeGennaro settled a lawsuit for $300,000, "some of which would have been allocable to [Debtor]," but "[DeGennaro] refused to allow Mr. Martelli to review the books and records of the corporation." *Id.* at 13:13–19. Indeed, the Bankruptcy Court acknowledged Judge Cleary's findings and the conduct described therein. Specifically, the Bankruptcy Court expressed its concern with "the role that Mr. DeGennaro plays

---

[7] I note that Judge Cleary's factual findings, upon which the "unfairness" holding was based, could have constituted cause to appoint a trustee. The language of § 1104(a)(1), "does not promulgate an exclusive list of causes for which a trustee must be appointed." *Marvel*, 140 F.3d at 472. Rather, "the concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide range of conduct, and courts must be given the discretion necessary to determine if the debtor-in-possession's conduct shown rises to a level sufficient to warrant the appointment of a trustee." *Id.* (internal citations omitted). Although there was no dishonesty, the actions of Debtor, and DeGennaro, could nonetheless have fallen within "wide range of conduct" covered by the statute. However, the Bankruptcy Court considered the conduct, and found that it did not fall within the statute. While a different conclusion could have been drawn, I do not find that the Bankruptcy Court abused its discretion in this regard.

in the, his role with the debtor and his role with the landlord." Bankruptcy Tr. I, 16:15–16. The court also stated that Appellant "ma[de] a good point about the $21,000 fair market rent." Bankruptcy Tr. II, 8:17–18. Nonetheless, the court found, in its discretion, that the findings of the state court were not "enough support to appoint a trustee in this case." Bankruptcy Tr. I, 17:21–22. In making this decision, the Bankruptcy Court did not rely upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact," *In re Nutraquest, Inc.,* 434 F.3d at 645. Thus, I find that the Bankruptcy Court acted within its discretion on the issue.

Furthermore, I find that Appellant's application of the *Rooker-Feldman* doctrine is misguided. "The *Rooker–Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." *In re Knapper,* 407 F.3d 573, 580 (3d. Cir. 2005) (citing *Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992)). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Here, Debtor, the "loser" in the state court proceeding, has not asked the Bankruptcy Court to either reopen or reject Judge Cleary's state court judgment. Although Debtor has a pending appeal with respect to Judge Cleary's decision, in the context of the present Bankruptcy Court proceeding, Debtor has not asked the Bankruptcy Court to review or reject any factual findings made by Judge Cleary. Rather, both the Debtor and the Bankruptcy Court have acknowledged the state court findings and the Bankruptcy Court indicated that none of its findings contradict those of the state court. Therefore, this Court finds that the *Rooker-Feldman* doctrine is not applicable here.

Appellant also alleges that, apart from Judge Cleary's findings, the irreconcilable conflict and acrimony between Martelli and DeGennaro, as evidenced, in part, from Martelli's oppressed shareholder suit, constitute "cause" for the appointment of a trustee. Appellant Br. at 8. However, Appellant did not expressly raise the issue of acrimony before the Bankruptcy Court; rather, Appellant's motions both focused on the improper actions of the Debtor. Thus, the Bankruptcy Court did not make any finding on this issue. But, it is clear that a conflict exists, as evidenced by the pending appeal in state court, and acrimony and conflicts of interest may constitute "cause" for the appointment of a trustee; nonetheless, the bankruptcy "court may find cause to appoint a trustee for 'acrimony' only on a case-by-case basis, as opposed to a per se rule." *Marvel*, 140 F.3d at 472. However, because Appellant did not raise the issue until the present appeal, leaving this Court with nothing to review, I will not consider this issue further. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941) ("an appellate court does not give consideration to issues not raised below"); *United States v Lockett.*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances."); *Bell Atl.-Pennsylvania, Inc. v. Pennsylvania Pub. Util. Comm'n*, 273 F.3d 337, 344 n. 3 (3d Cir. 2001) ("Our general practice is not to address legal issues not raised below, absent exceptional circumstances."); *see also In re Stone Resources, Inc.*, 482 Fed.Appx. 719, 723 (3d Cir. 2012) (noting that when a district court reviews bankruptcy court determinations, "[i]ts jurisdiction is circumscribed in the same way that an appellate court's ordinarily is.").

In addition, Appellant argues that the oppressive conduct of DeGennaro, acting on behalf of Debtor, inherently constitutes a breach of the fiduciary obligations that officers and directors of corporations have to stockholders. Appellant Br. at 9. Appellant contends that Debtor's past and present breaches of fiduciary obligations—namely, the deprivation of access to Debtor's books

and records, and the continued payment of excess rent—satisfy the requirement of cause to appoint a trustee, because § 1104 includes cause which arose "either before or after the commencement of the case." *Id.*

It is true that Debtor, both past and present, owes a fiduciary duty to Appellant. "When the chapter 11 petition . . . [was] filed . . ., the debtor-in-possession assumed the same fiduciary duties as would an appointed trustee . . . ." *Marvel*, 140 F.3d at 474. "These obligations include '[o]pen, honest and straightforward disclosure to the Court and creditors.'" *Id.* (citing *V. Savino Oil*, 99 B.R. at 526). "Also among the fiduciary obligations of a debtor-in-possession is the 'duty to protect and conserve property in its possession for the benefit of creditors.'" *Id.* (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990)).

Further, Appellant's allegations that Debtor breached fiduciary duties in the past are substantiated by the record. In her state court decision, Judge Cleary found that DeGennaro, as director of Debtor, owed a fiduciary duty to stock holders such as Appellant but "operated the corporation without considering his duty, . . . [constituting] unfairness under the provisions of N.J.S.A. 14:A12–7(1)(c)." Tr. of Judge Cleary Decision 13–14. Specifically, Judge Cleary found that DeGennaro refused to allow Appellant to review Debtor's books and records or give him any information about the financial institution.[8] *Id.* at 13. Appellant additionally claims that the continued payment of excessive rent is a breach of Debtor's fiduciary duty.

---

[8] Appellant cites and provides to the Court an unreported New Jersey Appellate Division case to "provide additional guidance when considering the dishonesty of the DeGennaros and Debtor." Appellant Br. at 9. The case, *Munoz v. Perla, et al.*, No. A-5922-08T3, 2011 WL 6341182 (N.J. App. Div. Dec. 20, 2011), involved a lawsuit by one member of a partnership against the other partners for, *inter alia*, breach of fiduciary duty. The primary issue in the case involved rental leases with other companies—owned by the same partners—which charged below-market rent. *Id.* at *3, *6. The defendants argued that the below-market rent issue was barred by the statute of limitations, because such leases had originally been signed in 1994; the Appellate Division upheld the trial court's determination that, because the leases were renewed in 2003, there was no statute of limitations bar. *Id.* at *14–15. Appellant asserts that *Munoz* demonstrates that "breaches of

While Debtor appears to have breached its fiduciary duties to Martelli prior to filing for bankruptcy, Appellant has not alleged that Debtor continues to refuse access to Debtor's books, records, or information. In fact, both the Bankruptcy Court and attorney representing the Office of the United States Trustee indicated that Debtor has provided the court with all mandatory disclosures. Furthermore, Debtor's continued payment of rent is not inherently a breach of fiduciary duty. Although Judge Cleary found that Debtor paid rent that was "not at a fair market rate," she did not void the lease; the finding of the excessive rent was simply evidence of Martelli's oppressed shareholder status. *See* Judge Cleary Decision, 13:2–12, 14:17. Similarly, the Bankruptcy Court asked the parties, with regard to the amount of rent to be paid, "is there a written lease?" The parties answered in the affirmative. Bankruptcy Tr. I, 11:8–9. Moreover, the evidence before the court indicated that Debtor was not paying the full amount of rent. Bankruptcy Tr. I, 9:24–25, 10:1–2; Bankruptcy Tr. II, 10:7–12.[9] In sum, the record does not show that Debtor has continued to breach its fiduciary duties as debtor-in-possession after the Bankruptcy petition was filed. Thus, this Court does not find that the Bankruptcy Court abused its discretion in failing to appoint a trustee for this reason.

### 2. § 1104(a)(2) – Appointment of Trustee in the Best Interests of Creditors or Estate

Under § 1104(a)(2), the bankruptcy court may appoint a Chapter 11 trustee if it finds the appointment to be in the best interest of the creditors, equity security holders, or other interests of

---

fiduciary duty may be continuous." Appellant Br. at 9. This Court has already recognized Judge Cleary's findings that DeGennaro and Debtor breached their fiduciary duty when restricting access to the books and records, and in the initial setting of the rent; it is unclear what else *Munoz* adds to Appellant's argument, and therefore, this case is not helpful.

[9] The Office of the United States Trustee, represented by Jeffrey Sponder, Esq., indicated at oral argument that he had reviewed Debtor's monthly operating reports and found that during the five months since the bankruptcy case had been filed, Debtor had only paid $31,000 per month, as opposed to the $75,000 per month rent found in the lease agreement. *See* Bankruptcy Transcript II, 10:7–9.

the estate. 11 U.S.C. § 1104(a)(2). This subsection "envisions a flexible standard," which gives the bankruptcy court discretion to appoint a trustee "when to do so would serve the parties' and estate's interests." *Marvel*, 140 F.3d at 474 (citing *Sharon Steel*, 871 F.2d at 1226). In many cases, the bankruptcy court's findings with regard to cause under § 1104(a)(1) and the best interests of the debtor's creditors under § 1104(a)(2) are "intertwined and dependent upon the same facts." *In re Gasso*, 490 B.R. 500, 506 (Bankr. E.D. Pa. 2013); *see also Marvel*, 140 F.3d at 474 (finding that the "level of acrimony" permitted appointment under § 1104(a)(1) for cause and was also in the best interests of the parties and the estate pursuant to § 1104(a)(2)). "Because subsection (a)(2) envisions a flexible standard, an abuse of discretion standard offers the most appropriate type of review for this subsection as well." *Sharon Steel Corp.*, 871 F.2d at 1226.

Here, Appellant moved for the appointment of a trustee under both subsections (a)(1) and (a)(2); the Bankruptcy Court denied the motion entirely, but did not make specific findings with respect to subsection (a)(2). However, the Bankruptcy Court found that the appointment of a trustee was inappropriate, based in part on "the amount of assets that are available to pay a trustee and then also pay creditors." Bankruptcy Tr. I, 17:5–6. This Court will construe that statement as a finding that, based on the finances of the debtor, the appointment of a trustee was not in the best interests of the creditors.

Appellant, however, contends that appointment of a trustee under subsection (a)(2) is in the best interest of the creditors, equity security holders, and the estate. Appellant Br. at 10. Appellant asserts that Debtor's refusal[10] to bring a fraudulent transfer action against Pegasus for

---

[10] While Appellant contends that Debtor refuses to file a fraudulent transfer action against Pegasus, Debtor indicates that, though it does not believe such a suit would result in recovery for the estate, it has not yet made a determination whether to pursue any avoidance actions. Pursuant to § 546, "an action or proceeding under section . . . 548[, the fraudulent transfer code provision,] of this title may not be commenced after the earlier of (1) the later of (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . ." 11 U.S.C.

the alleged excessive rent and the 2006 settlement proceeds amounting to $300,000, is evidence that appointment of a trustee would be in the best interest of the estate and its creditors. *Id.* at 11.

Appellant initially argues that this case is similar to *In re Cloudeeva, Inc.*, a case where the bankruptcy court found that appointment of a Chapter 11 trustee was in the best interest of creditors and thus warranted under § 1104(a)(2). No. BR 14–24874, 2014 WL 6461514 (Bankr. D.N.J. Nov. 18, 2014). In *Cloudeeva*, the bankruptcy court appointed a trustee because, *inter alia*, the chief executive officer had voted to pay himself a $550,000 bonus while simultaneously claiming that the company was experiencing a liquidity crisis. *Id.* at *7. The bankruptcy court in *Cloudeeva* found that the debtor's CEO "demonstrated utter disregard for the best interest of the estate" in determining to pay himself a performance bonus after filing for Chapter 11 bankruptcy. *Id.* at *7.

Appellant argues that the large bonus in *Cloudeeva* "is clearly akin" to the excessive rent paid by Debtor to Pegasus, both of which are allegedly "a way to enrich the principal." Appellant Br. at 10. This Court finds Appellant's comparison to be exaggerated. Whereas the majority shareholder in *Cloudeeva* voted to pay himself a discretionary performance bonus while the company was financially struggling, Debtor, here, has continued to honor, to the extent financially maintainable, an existing lease agreed upon by the two parties fifteen years ago. To the extent that Appellant is alleging that the existence of the lease is, itself, not in the best interest of the creditors, I note that Appellant has not been paying the full amount owed—the Office of the United States Trustee, represented by Jeffrey Sponder, Esq., indicated at oral argument that he had reviewed Debtor's monthly operating reports and found that during the five months since the bankruptcy case had been filed, Debtor had only paid $31,000 per month, as opposed to the $75,000 per month

----

§ 546(a). Therefore, Debtor would have until June 10, 2016 to determine whether it will pursue such actions. However, as Debtor has repeatedly indicated, both at oral argument and in briefings to this Court, that it does not believe a suit would be worth pursuing, the Court will assume, *arguendo*, that Debtor has refused to file suit.

rent required by the lease agreement. *See* Bankruptcy Transcript II, 10:7–9. The fact that Debtor continues to pay a fraction of the money owed under a pre-existing lease does not amount to "utter disregard" for the best interests of the creditors.

Appellant further argues that recovery of the excessive rent and "all or part of the $300,000 settlement to which Debtor is entitled" will allow Debtor to satisfy in full all non-insider debt, and that such a recovery would therefore be in the interests of the creditors. Appellant Br. at 11. Appellant concludes that, because Debtor continues to pay the rent and will not sue to recover these allegedly "misappropriated funds," the Debtor's actions are inconsistent with the best interests of the creditors. *Id.*

However, as Appellant acknowledges, Judge Cleary's opinion did not void or modify the terms of Debtor's obligation to pay rent to Pegasus pursuant to the lease, but only found it unfair to Appellant. In fact, Debtor remains contractually obligated to pay $75,000 rent per month until Debtor files a disclosure statement and repayment plan. Indeed, Debtor has been instructed by the Bankruptcy Court to "fix the rent with Pegasus" in the repayment plan. Bankruptcy Transcript I, 21:1. Similarly, Mr. Sponder agreed that Debtor and Pegasus should determine a rent amount that is "fair" going forward. *Id.* at 20:12–14. In the meantime, Pegasus has accepted markedly less than the agreed upon $75,000 per month since Debtor's filing of the Chapter 11 bankruptcy.[11] Accordingly, the Bankruptcy Court did not abuse its discretion by failing to hold that payment of the rent is sufficient evidence that a trustee is required to protect the interests of the creditors.

Moreover, as already stated, the Bankruptcy Court based its decision, at least in part, on the limited amount of assets available to pay a trustee and the various creditors. Bankruptcy Transcript I, 17:5–6. At the time of its Chapter 11 petition, Debtor valued its assets at

---

[11] As noted *supra* n.9, following the bankruptcy petition Debtor's paid, on average, $31,000 in rent, including two months where Debtor failed to pay any rent. Bankruptcy Transcript II, 10:12.

approximately $240,000 with scheduled total debts of $6,040,466.80, including fourteen non-insider creditors with debts totaling $1,422,878.80. Whether "appointment of a trustee would entail substantial costs [is a] relevant factor[] to be considered in determining whether [the clear and convincing] burden has been met in a particular case." *G-I Holdings*, 385 F.3d at 320–21; *see also In re Brown*, 31 B.R. 583, 585 (D.D.C. 1983) (stating that "Section 1104(a)(2) embodies a more flexible standard under which the court may engage in a cost benefit analysis"); *In re SunCruz Casinos*, 298 B.R. 821, 829 (Bankr. S.D. Fla. 2003) (quoting legislative history of § 1104(a) as stating that "The court may order appointment only if the protection afforded by a trustee is needed and the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded." (quoting H.R. Rep. 95-595, U.S. Code Cong. & Admin. News 1978, pp. 5963, 6358–6359 (1977)). In its discretion, the Bankruptcy Court appropriately considered the substantial costs of a trustee relative to the benefit to the creditors and found that appointment of a trustee was not in the creditors' best interests.

In sum, while a close call as to whether a trustee should be appointed, this Court finds that the Bankruptcy Court did not abuse its discretion in denying Appellant's request for appointment of a trustee.

### B. Comfort Order and Relief from Automatic Stay

In his motion for reconsideration, Appellant requested a comfort order stating that he was permitted to file a fraudulent transfer action against the DeGennaros and Pegasus in New Jersey Superior Court. In the alternative, Appellant moved for an order granting relief from the automatic stay to pursue the fraudulent transfer action.[12] In his brief, however, Appellant presents only

---

[12] Debtor contends that Appellant's request for a comfort order or relief from the automatic stay was improperly raised in the motion for reconsideration because Appellant had not requested this relief in his original motion to appoint a Chapter 11 trustee. Debtor also states that Appellant failed pay the $176 filing fee to file a motion to vacate the automatic stay. Debtor did not raise these

arguments for relief from an automatic stay under 11 U.S.C. § 362(d). Accordingly, this Court will focus only on this inquiry.

Under 11 U.S.C. § 362(a)(3), a Chapter 11 bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Appellant seeks relief from the automatic stay under 11 U.S.C. § 362(d), which states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11. U.S.C. § 362(d)(1). The bankruptcy court's decision to grant or deny relief from the automatic stay is reviewed for abuse of discretion. *See In re Stone Res., Inc.*, 482 F. App'x 719, 722 (3d Cir. 2012) (citing *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007)). "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *Stone Res.*, 482 F. App'x at 722 (citing *Baldino v. Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). "A bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause." *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003) (citing *In re Rosen*, 208 B.R. 345, 356 (D. N.J. 1997)). Although lack of adequate protection is the most common basis for granting a relief from the automatic stay for "cause," other bases

---

issue before the Bankruptcy Court, nor did the Bankruptcy Court address it in oral argument. The Court will not consider this argument for the first time on appeal. *See United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.").

exist, including when it may be necessary to permit litigation to be concluded in another forum. *See id.* (citing *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D. N.J. 1999)).

Appellant contends that, in light of the Bankruptcy Court's obligation to accept Judge Cleary's findings under the *Rooker-Feldman* doctrine[13], the excessive rent and settlement proceeds channeled away from Debtor to Pegasus constitute "cause" under § 362(d)(1). Appellant Br. at 13. Appellant concludes that "[D]ebtor will not sue the related parties to retrieve the assets fraudulently transferred by [D]ebtor," in effect, violating its duty as the debtor in possession.[14] *Id.* Further, Appellant argues that the Bankruptcy Court erred in deferring to the Debtor's business judgment. *Id.* at 14.

With respect to the requested relief from the automatic stay, Appellant argued to the Bankruptcy Court that he intended to sue DeGennaro and Pegasus for fraudulent transfer, and he stated that he believed the "debtor is not going to seek to" do so. *Id.* 15:26 to 16:6. However, the Bankruptcy Court responded that "the debtor is telling me that in his business judgment it's not a fraudulent transfer." *Id.*, 16:7–8. The Bankruptcy Court then found "I don't have any jurisdiction over the DeGennaros or Pegasus Properties. There is no stay . . . applicable." *Id.* at 20:6–8. However, when asked for clarification as to whether Appellant could sue, with respect to Martelli's proposed cause of action, a suit for "fraudulent transfer and money to come back into the estate,"

---

[13] This Court has already rejected Appellant's arguments relating to the *Rooker-Feldman* doctrine. *See supra*.

[14] This Court agrees that a debtor in possession has the rights and shall perform the functions and duties of a Chapter 11 trustee. *See* 11 U.S.C. § 1107(a). Section 1106 specifies the duties of a Chapter 11 trustee or examiner, which include several of the duties of a Chapter 7 trustee "as specified in paragraphs (2), (5), (7), (8), (9), (10), (11), and (12) of section 704(a)." 11 U.S.C. § 1106(a)(1). However, Appellant errs in asserting that a debtor-in-possession has the duty to "collect and reduce to money the property of the estate which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest . . ." pursuant to Section 704(a)(1). This section is not one of the aforementioned specified paragraphs referred to in the Chapter 11 code, rather, it only appears in Chapter 7 proceedings.

the Bankruptcy Court stated that, "you can't sue them for that . . . [b]ecause that's an estate asset and I'm going to let [Debtor's attorney] protect the estate assets." *See id*. at 20:23–25. 11 U.S.C. § 362(a)(3).

At the outset, I note that it is unclear whether Appellant was, in fact, barred from bringing suit against Pegasus and DeGennaro, who are non-debtors. "Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings against a 'debtor'—the term used by the statute itself." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992). In other words, according to the Third Circuit, the automatic stay applies to "a proceeding [that] was *originally brought* against the debtor." *Id.* Here, Appellant does not intend to sue Debtor; rather, Appellant would bring the suit on Debtor's behalf as a shareholder.[15] However, courts in the Third Circuit, as well as other federal courts, have extended the automatic stay to proceedings against non-debtors who were directors or officers of a debtor-corporation. *See, e.g.*, *In re Zenith Laboratories*, 104 B.R. 659, 664–66 (D.N.J. 1989); *see also In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993), *id.* at 479 n.4 (citing cases). Thus, while a suit against Pegasus could go forward regardless of the automatic stay, a suit against DeGennaro, as a director of Debtor, may be subject to the stay. No party, however, has raised this question; accordingly, I will not address it further.

Nonetheless, assuming *arguendo* that the automatic stay could bar Appellant's proposed state lawsuit, I find that the Bankruptcy Court did not adequately articulate its reasoning for the

---

[15] It is true that creditors ordinarily lack standing to bring a cause of action that is "property of the estate," *see In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (subsequent history omitted); however, as Appellant appears to remain a shareholder of the debtor while the state court appeal is pending, Appellant would be bringing the proposed suit in that capacity. I express no opinion here as to whether Appellant has met the requirements to bring such a suit.

denial of the motion for relief from the automatic stay. Indeed, the only reason given by the court for the denial is that the proposed lawsuit is "an estate asset," and that Debtor's attorney should be the one to protect the asset. While the fact that the lawsuit is property of an estate might deny a creditor standing to bring suit on the estate's behalf, *see supra* n.14, it is not a sufficient reason to deny Appellant, a shareholder, the opportunity to do so. Simply, the Bankruptcy Court did not conduct a full analysis under § 362(d)(1). As the Bankruptcy Court's explanation does not provide sufficient reason for its denial, I find that the Bankruptcy Court abused its discretion. *Cf. Forman v. Davis*, 371 U.S. 178, 182 (1962) (stating that "the grant or denial of an opportunity to amend is within the discretion of the District Court," but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion.").

Further, this Court finds that there was sufficient cause to grant Appellant relief from the stay. While Debtor protests that it has not yet decided whether to pursue a fraudulent transfer action, Appellee Br. at 11, it is apparent that Debtor will not pursue a fraudulent transfer action against Pegasus or DeGennaro, for the simple reason that DeGennaro, who is one of two shareholders in Pegasus, is also the primary shareholder and sole officer of Debtor. *See* Tr. of Judge Cleary Decision, 4:22–24, 13:20–21. Indeed, at oral argument on the initial motion to appoint a trustee, the Bankruptcy Court noted the deeply intertwined relationship between Debtor, DeGennaro, and Pegasus. *See* Bankruptcy Tr. I, 11:3–5 ("My only question was if Anthony DeGennaro is the principal of both the country club and a 50 percent or better owner of Pegasus, and he's the one who's controlling the case and making decisions on the case, how does he determine what the fair market rent is."); 16:15–16 ("My biggest concern was that the decision maker is also one of the larger creditors in the case. As far as Mr. DeGennaro, the role that Mr. DeGennaro plays in the, his role with the debtor and his role with the landlord."). Thus, any refusal

25

by Debtor to pursue a lawsuit against Pegasus or DeGennaro cannot be said to have been made by a disinterested party, *see infra*. Accordingly, there is a "lack of adequate protection of an interest in property of such party in interest," as required by § 362(d)(1): that is, Debtor refuses to protect its own interest in recovering the allegedly fraudulent transfers.

To the extent that the Bankruptcy Court deferred to Debtor's "business judgment" that no fraudulent transfer occurred, I agree with Appellant that this was in error. Under New Jersey law, "the business judgment rule" protects the full and free exercise of directorial decision-making from "judicial interference and constant hindsight." *See Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 759 (D. N.J. 2013); *see Maul v. Kirkman*, 270 N.J. Super. 596, 614, 637 A.2d 928 (N.J. Super. 1994). The rule typically operates as a rebuttable presumption that corporate director decisions have been made in good faith; to overcome the presumption, the challenger must show that the director engaged in some form of "some form of self-dealing or other disabling conduct." *Jurista*, 492 B.R. at 759. Importantly, "the business judgment rule will not shield directors' decisions in instances of fraud, self-dealing, or unconscionable conduct." *See id.*; *Maul*, 270 N.J. Super. at 614.

In this case, the evidence strongly suggests that DeGennaro, the primary shareholder and sole officer of Debtor, was engaging in self-dealing. "Classic self-dealing" occurs where "a director stands on both sides of a transaction." *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 840 n.17 (3d Cir. 2010). Indeed, though Judge Cleary did not use such a phrase, the state court's findings amount to a showing of self-dealing: DeGennaro was on both sides of the transaction when he "fixed the rent . . . not at a fair market rate, but at a rate designed to give Anthony DeGennaro a return on capital without regard to net earnings." Tr. of Judge Cleary Decision, 13:5–9. Similarly, by allegedly failing to properly allocate the settlement proceeds received by Pegasus, *see id.* at 13:13–16, the proceeds likely benefited DeGennaro and his wife, the sole owners of Pegasus. Accordingly, as a finding of self-dealing overcomes the business

judgment rule, there exists evidence to show that DeGennaro was not acting impartially in this context.

Nevertheless, Debtor argues that the automatic stay should not be lifted, as any suit brought by Appellant in state court would be futile, because it would be barred by the entire controversy doctrine. Appellee Br. at 11 n.4. Debtor also asserts that any suit regarding the settlement proceeds would be barred by the statute of limitations. *Id.* at 9. Both the entire controversy doctrine and the statute of limitations, however, are defenses to the proposed suit. They have no bearing on whether Appellant should be permitted to attempt to bring his claim.

Moreover, as a matter of equity, permitting Appellant to pursue a lawsuit against Pegasus and DeGennaro will not result in any harm to Debtor's estate. Indeed, such a suit can only benefit the estate: no estate funds will go toward the litigation, and any recovery will be added to the estate, which can be distributed to creditors. Thus, I reverse the Bankruptcy Court's denial of Appellant's motion for relief from the automatic stuff.

I briefly note one additional argument that Appellant made in support of its right to obtain relief from the automatic stay. Appellant asserts that the Bankruptcy Court is authorized to bestow derivative standing upon creditors to assert claims on behalf of and for the benefit of a bankruptcy estate. Appellant Br. at 14–15. Appellant did not raise the issue of derivative standing in the Bankruptcy Court and this issue will therefore not be considered in this appeal. *See United States* [16]*v Lockett.*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the

---

[16] I also note that Appellant refers the Court to *Stern v. Marshall*, and argues that the Bankruptcy Court should have granted relief from the automatic stay because it does not have jurisdiction to render final judgment in fraudulent transfer actions. Appellant Br. at 16. It is not clear why this argument is relevant: *Stern* addressed the question of when a bankruptcy court has the constitutional authority to pronounce a final judgment on a so-called "core proceeding" related to a bankruptcy petition, under 28 U.S.C. § 157. *Stern v. Marshall*, 131 S. Ct. 2594, 2601 (2011). Here, the Bankruptcy Court did not address the question of where Appellant should bring a

first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances."). I note, however, that if Appellant is unable to meet the requirements for a shareholder suit, he may potentially be able to acquire standing for a creditor derivative suit. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (finding that congressional intent and policy concerns weigh in favor of the bankruptcy court's power to confer derivative standing where a debtor refuses to bring an action that would benefit the estate). Again, I make no findings on the viability of such an action.

**IV. Conclusion**

For the foregoing reasons, the Court affirms in part and reverses in part the Bankruptcy Court Decision. Specifically, this Court affirms the denial of Appellant's motion to appoint a trustee under 11 U.S.C. § 1104. However, the portion of the Bankruptcy Court's decision which denied Debtor's request for a relief from the automatic stay is reversed. An appropriate Order shall follow.

Date:   August 24, 2015                                  /s/  Freda L. Wolfson
                                                         Hon. Freda L. Wolfson, U.S.D.J.

---

fraudulent transfer suit, nor did the Bankruptcy Court rule on the fraudulent transfer allegations, much less pronounce a final judgment.

Moreover, I note that while the fraudulent transfer claim in this case may be a "Stern" claim—that is, a proceeding that is "defined as 'core' by 11 U.S.C. § 157(b), but may not, as a constitutional matter, be adjudicated as such," *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014)—the Supreme Court has held that the bankruptcy courts may hear such claims in the first instance, and submit proposed findings of fact and law to the District Court to be reviewed de novo. Thus, to the extent that Appellant is suggesting that the Bankruptcy Court did not have jurisdiction to apply or grant relief from the automatic stay on the fraudulent transfer claim, this suggestion is incorrect. First, such a ruling is not a "final judgment." Second, the Bankruptcy Court is permitted to rule even on "Stern" claims, so long as those rulings are subject to de novo review by the district court.